1    Holly M. Simpkins (*pro hac vice*)
     HSimpkins@perkinscoie.com
2    PERKINS COIE LLP
     1201 Third Avenue, Suite 4900
3    Seattle, WA  98101
     Telephone:  206.359.8000
4    Facsimile:  206.359.9000

5    Andrew N. Klein, Bar No. 300221
     AKlein@perkinscoie.com
6    PERKINS COIE LLP
     3150 Porter Drive
7    Palo Alto, CA 95130
     Telephone: 650.838.4300
8    Facsimile: 650.838.4350

9    Attorneys for Plaintiffs
     EPIC GAMES, INC. and EPIC GAMES
10   INTERNATIONAL S.À.R.L.

11                          UNITED STATES DISTRICT COURT

12                        NORTHERN DISTRICT OF CALIFORNIA

13                             SAN FRANCISCO DIVISION

14

15   EPIC GAMES, INC., a Maryland            Case No. 3:17-cv-06223-LB
     corporation; and EPIC GAMES
16   INTERNATIONAL S.À.R.L.,                 **PLAINTIFFS' EPIC GAMES, INC. AND**
     a Luxembourg Société à Responsibilité   **EPIC GAMES INTERNATIONAL**
17   Limitée,                                **S.À.R.L.'S NOTICE OF MOTION AND**
                                             **MOTION AND MEMORANDUM OF**
18                    Plaintiffs,            **POINTS AND AUTHORITIES IN SUPPORT**
                                             **OF MOTION FOR ENTRY OF DEFAULT**
19        v.                                 **AS TO DEFENDANT KONSTANTIN**
                                             **VLADIMIROVICH RAK**
20   JAMES MENDES, an individual;
     KONSTANTIN VLADIMIROVICH RAK,           Hearing Date:   May 31, 2018
21   an individual; and OLEKSEY              Time:           9:30 a.m.
     OLEKSEEVICH STEGAILO, an                Judge:          Hon. Laurel Beeler
22   individual,                             Courtroom:      C, 15th Floor

23                    Defendants.

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 31, 2018, at 9:30 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Laurel Beeler, located at 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiffs Epic Games, Inc. and Epic Games International, S.à.r.l. (hereinafter "Epic") will, and hereby do, move pursuant to Civil Local Rule 7-2 for default judgment and a permanent injunction to prevent future unlawful activity by Defendant Konstantin Vladimirovich Rak.

Because Defendant has failed to appear and defend this action, Epic is entitled to a judgment on liability and to equitable relief against Defendant on the following claims pleaded in the Complaint:  (1) copyright infringement, (2) trademark infringement, and (3) false designation of origin.  Upon a finding of liability, Epic requests that this Court enter a permanent injunction against Defendant that bars him from using Epic's copyrighted works or trademark in connection with the advertising, demonstration, or distribution of any video, or sale of any goods or services; and/or developing and distributing any item that modifies Epic's protected computer code.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying declarations of Holly M. Simpkins and Michael Atamas and attached exhibits, the records and files in this action, and any other matter the Court may consider.

1

## TABLE OF CONTENTS

2

**Page**

3
I.      INTRODUCTION ............................................................................................................1

4
II.     BACKGROUND ..............................................................................................................1

5
        A.      Fortnite .................................................................................................................1

6
        B.      Epic's Intellectual Property..................................................................................2

        C.      Mr. Rak's Infringing Conduct..............................................................................3

7
        D.      Procedural History ...............................................................................................3

8
III.    JURISDICTION................................................................................................................4

9
IV.     ARGUMENT ....................................................................................................................5

10
        A.      Mr. Rak is Liable for Copyright Infringement, Trademark Infringement and
                False Designation of Origin .................................................................................6

11
                1.      Copyright Infringement.............................................................................6

12
                2.      Trademark Infringement ...........................................................................7

13
                3.      False Designation of Origin .....................................................................9

        B.      The Eitel Factors Strongly Favor Entry of Default Judgment ................................9

14
        C.      Epic is Entitled to a Permanent Injunction..........................................................10

15
V.      CONCLUSION ...............................................................................................................12

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AMF, Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979)........................................................................................8

*Apple, Inc. v. Psystar Corp.,*
    673 F. Supp. 2d 943 (N.D. Cal. 2009) .....................................................................10

*Bittorrent, Inc. v. Bittorrent Mktg. GMBH,*
    No. 12-cv-02525, 2014 WL 5773197 (N.D. Cal. Nov. 5, 2014) ...................................5, 10, 11

*Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co. Ltd.,*
    15-cv-04084-CRB, 2018 WL 1242053 (N.D. Cal. Mar. 8, 2018) ...............................7

*Broadcast Music, Inc. v. Roascio,*
    No. C 12-04740 LB, 2013 WL 12303238 (N.D. Cal. July 18, 2013) (Report &
    Recommendation), *adopted*, 2013 WL 12303204 (N.D. Cal. Aug. 15, 2013) ................ passim

*Brookfield Commc'ns, Inv. v. W. Coast Entm't Corp.,*
    174 F.3d 1036 (9th Cir. 1999)........................................................................................8

*Clarity Software, LLC v. Allianz Life Ins. Co. of N. Am.,*
    No. 2:04-cv-1441, 2006 WL 2346292 (W.D. Pa. Aug. 11, 2006).........................................6, 7

*Disney Enters., Inc. v. VidAngel, Inc.,*
    869 F.3d 848 (9th Cir. 2017).........................................................................................6

*eBay, Inc. v. MercExchange, LLC,*
    547 U.S. 388 (2006) ....................................................................................................11

*Eitel v. McCool,*
    782 F.2d 1470 (9th Cir. 1986)............................................................................6, 9, 10

*Herman Miller Inc. v. Alphaville Design Inc.,*
    No. C 08-03407 WHA, 2009 WL 3429739 (N.D. Cal. Oct. 22, 2009) ..............................11, 12

*JL Beverage Co., LLC v. Jim Beam Brands, Co.,*
    828 F.3d 1098 (9th Cir. 2016).......................................................................................9

*Micro Star v. Formgen, Inc.,*
    154 F.3d 1107 (9th Cir. 1998)........................................................................................7

*Microsoft Corp. v. Buy More, Inc.,*
    136 F. Supp. 3d 1148 (C.D. Cal. 2015) ......................................................................11

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Oppenheimer v. Allvoices, Inc.,*
No. 14-cv-00499 LB, 2014 WL 2604033 (N.D. Cal. June 10, 2014).........................................9

*PepsiCo, Inc. v. Cal. Sec. Cans,*
238 F. Supp. 2d 1172 (C.D. Cal. 2002) .......................................................................10

*PepsiCo, Inc. v. Triunfo-Mex, Inc.,*
189 F.R.D. 431 (C.D. Cal. 1999) .................................................................................9

*Reno Air Racing Ass'n, Inc. v. McCord,*
452 F.3d 1126 (9th Cir. 2006).....................................................................................11

*Rio Props., Inc. v. Rio Int'l Interlink,*
284 F.3d 1007 (9th Cir. 2002)......................................................................................5

*Rovio Entm't Ltd. v. Royal Plush Toys, Inc.,*
Civ. No. 12-5543, 2014 WL 1153780 (N.D. Cal. Mar. 20, 2014)..................................6

*Sleep Science Partners v. Lieberman,*
No. 09-04299 CW, 2010 WL 1881770 (N.D. Cal. May 10, 2010) ................................9

*Tecnologias Avanzadas RD, SRL v. Riegler,*
Case No. 16-cv-06701, 2017 WL 2772301 (N.D. Cal. June 1, 2017) ............................5

*TeleVideo Sys., Inc. v. Heidenthal,*
826 F.2d 915 (9th Cir. 1987).........................................................................................5

*Three Boys Music Corp. v. Bolton,*
212 F.3d 477 (9th Cir. 2000).........................................................................................6

*Travelers Cas. & Sur. Co. of Am. v. Brenneke,*
551 F.3d 1132 (9th Cir. 2009).......................................................................................4

*Ultra Records, LLC v. Teoh,*
No. 16-cv-9996 (DLC), 2017 WL 1753485 (N.D. Cal. Feb. 5, 2015)...........................5

*United Food & Comm. Workers Union v. Alpha Beta Co.,*
736 F.2d 1371 (9th Cir. 1984).......................................................................................4

*Valve Corp. v. Sierra Entm't Inc.,*
431 F. Supp. 2d 1091 (W.D. Wash. 2004)....................................................................7

*Wecosign, Inc. v. IFG Holdings, Inc.,*
845 F. Supp. 2d 1072 (C.D. Cal. 2012) .......................................................................12

-iii-

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

*Wilens v. Automattic, Inc.*,

4

    No. C 14-02419 LB, 2015 WL 498745 (N.D. Cal. Feb. 5, 2015) ..............................................5

5

*Yahoo! Inc. v. XYZ Cos.*,

    872 F. Supp. 2d 300 (S.D.N.Y. 2011) .........................................................................................8

6

*Yelp v. Catron*,

7

    70 F. Supp. 3d 1082 (N.D. Cal. 2014) ...........................................................................7, 8, 10

8

*Zito v. Steeplechase Films, Inc.*,

9

    267 F. Supp. 2d 1022 (N.D. Cal. 2003) ......................................................................................2

10

**STATUTES**

11

15 U.S.C. § 1114 .............................................................................................................................7, 8

12

15 U.S.C. § 1116(a) ...........................................................................................................................11

13

15 U.S.C. § 1125(a) .......................................................................................................................9, 11

14

15 U.S.C. § 1125(c) ...........................................................................................................................11

15

15 U.S.C. § 1125(d) ...........................................................................................................................11

16

17 U.S.C. § 106 ...............................................................................................................................6, 7

17

17 U.S.C. § 502(a) .......................................................................................................................6, 7, 10

18

28 U.S.C. § 1331 ................................................................................................................................4

19

28 U.S.C. § 1338 ................................................................................................................................4

20

Digital Millennium Copyright Act ...........................................................................................3, 4, 5

21

Lanham Act § 43(a)(1) ....................................................................................................................9, 11

22

**RULES**

23

24

Fed. R. Civ. P. 4 ............................................................................................................................4, 5

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Epic Games, Inc. and Epic Games International, S.à.r.l. (hereinafter "Epic") respectfully submit this Memorandum of Points and Authorities in support of its Motion for Default Judgment against Defendant Konstantin Vladimirovich Rak ("Mr. Rak").

## I.     INTRODUCTION

Mr. Rak developed and promoted a software program that enabled him and other players of the popular video game Fortnite to cheat, thereby obtaining a competitive advantage over other game players.  Mr. Rak published a video on YouTube to advertise, demonstrate, and distribute his cheat.  That video featured Epic's intellectual property, including the FORTNITE trademark and full screen gameplay of Epic's copyrighted Fortnite game.  Mr. Rak also provided instructions to other players on how to download the cheat, which, once downloaded and deployed in Fortnite, altered Epic's copyrighted game code.  These actions violated federal trademark and copyright law and harmed Epic by giving certain Fortnite players an unfair advantage, therefore degrading the quality of game play.

Epic served the Summons and Complaint on Defendant, but Defendant chose not to appear in these proceedings.  Epic therefore respectfully requests that this Court enter a default judgment against Defendant awarding a permanent injunction to bar Defendant from promoting and distributing game cheats using Epic's trademark and copyrighted works.

## II.     BACKGROUND

### A.     Fortnite

Founded in 1991, Epic Games, Inc. is a leading video game developer for PC, console, and mobile platforms.  Epic is the owner of all rights in Fortnite, a multiplayer survival and building action video game.  Compl. ¶ 1.  In Fortnite, players explore, scavenge gear, build fortified structures, and fight waves of monsters who want to kill the player and her friends. Compl. ¶ 12.  Epic released Fortnite in 2013.  Compl. ¶ 13.

Fortnite Battle Royale is a game mode for Fortnite released in September 2017.  Compl. ¶ 14.  In the Battle Royale game mode, 100 players drop from a flying bus via glider onto an

1   island and engage in intense player versus player combat until only one player remains standing.

2   That player wins the game.  Compl. ¶ 16.  Players use tools to scavenge resources and build

3   structures.  Declaration of Michael Atamas in Support of Motion for Default Judgment ("Atamas

4   Decl.") ¶ 2.  These structures protect players from other players who are trying to eliminate them

5   and enable players to more easily travel throughout the game.  *Id.*  Fortnite is free to play and is

6   extremely popular, with millions of players.  Compl. ¶¶ 14–15.

7   **B.      Epic's Intellectual Property**

8           Epic Games, Inc., is the author and owner of all copyrights in Fortnite, including but not

9   limited to its maps, items, characters, user interface, and software.  Compl. ¶ 18.  These

10  copyrights include the following U.S. Copyright Registration Nos.:  TXu 1-895-864, TX 8-186-

11  254, TX 8-254-659, TX 8-352-178, TX 8-508-464, TX 8-507-210 and PA 2-087-919.  Atamas

12  Decl. Exs. A & B.[1]

13          Epic also owns the FORTNITE trademark.  Epic began using the FORTNITE mark in

14  commerce at least as early as October 2013.  Compl. ¶ 21.  Since that time, Epic has continually

15  used the FORTNITE mark in connection with video game software and has invested substantial

16  resources in marketing, advertising, and distributing video games under the FORTNITE mark.

17  Compl. ¶¶ 23–24.  The FORTNITE mark is associated with Epic by the more than forty-five

18  million people worldwide (as last publicly reported) who play Epic's FORTNITE games.  Compl.

19  ¶¶ 24–26; Atamas Decl. ¶ 7.  Below is an image of the FORTNITE mark as used in an online

20  trailer for Fortnite Battle Royale.

21



22

23  Atamas Decl. ¶ 6.  Epic owns United States Patent and Trademark Office Registration Nos.

24  4,481,629 and 5,375,076 for the FORTNITE mark.  Compl. ¶ 27; Atamas Decl. Ex. C.

25  --------

26          [1] Epic obtained additional registrations for Fortnite since filing the Complaint.  Atamas
    Decl. ¶ 4.  Those registrations are Registration Nos. TX 8-508-464, TX 8-507-210 and PA 2-087-
27  919.  *Id.*  Epic requests that the Court permit Epic to amend its copyright claim to include these
    registrations.  *See Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1025 (N.D. Cal. 2003)
28  (copyright plaintiff may amend complaint to include an allegation that the copyrighted work is
    registered).

1    Registration No. 4,481,629 is for "[v]ideo game software," and Registration No. 5,375,076 is for

2    "[e]ntertainment services, namely, providing on-line computer games."  Atamas Decl. Ex. C.

3    **C.     Mr. Rak's Infringing Conduct**

4            Mr. Rak developed, used, and promoted a software cheat that permits Fortnite players to

5    gain advantages in the game over non-cheating players.  Compl. ¶ 60.  A player uses the cheat by

6    injecting it into the Fortnite game code, which alters the code to give the cheating player certain

7    advantages in the game.  Compl. ¶ 63.  These advantages include the ability to see through walls

8    to spot competing players.  Atamas Decl. Ex. D.  Cheats give cheaters an unfair advantage over

9    gamers who play fairly, which ruins the game experience for others and undermines the integrity

10   of Fortnite.  Compl. ¶¶ 39–42; Atamas Decl. ¶ 8.

11           Mr. Rak published a video on YouTube in which he demonstrated his cheat and directed

12   others how to access and use it.  Compl. ¶ 61.  The video featured full-screen game-play of

13   Fortnite Battle Royale.  Compl. ¶ 67.  It also prominently displayed the FORTNITE marks.

14   Atamas Decl. Ex. D.  Needless to say, Epic had not given Mr. Rak permission to use the

15   FORTNITE mark or its copyrighted work in promoting Mr. Rak's cheat.  Shortly after Mr. Rak

16   posted the infringing video, Epic submitted a takedown notice to YouTube under the Digital

17   Millennium Copyright Act ("DMCA").  *See* Compl. ¶ 68.  After YouTube removed the video,

18   Mr. Rak submitted a DMCA counter-notification.  Atamas Decl. ¶ 11, Ex. E.  This counter-

19   notification contained a physical address in Russia, the email address,

20   konstantin.rak1@gmail.com, and a phone number.  *Id.*  Epic located a second email address for

21   Defendant, rak13@spaces.ru, which is connected to his Epic account.  *Id.* ¶ 12.

22   **D.     Procedural History**

23           Shortly after Mr. Rak submitted his DMCA counter-notification, Epic sued Mr. Rak for,

24   among other things, copyright infringement, trademark infringement, and false designation of

25   origin.  *See generally* Compl.

26           On October 31, 2017, Epic sent an email to Mr. Rak at konstantin.rak1@gmail.com and

27   rak13@spaces.ru informing him of this lawsuit and attaching a copy of the Complaint, Summons,

28   and a Waiver of Service of Summons.  Declaration of Holly M. Simpkins ("Simpkins Decl.") ¶ 2,

1    Ex. A.  The email transmission was successful, that is, the email did not "bounce back."  *Id.*

2    Nevertheless, Mr. Rak did not respond to Epic's email.  *Id.*

3         Unable to personally serve Mr. Rak in Russia, Epic filed a motion to serve Mr. Rak via

4    alternative means on January 8, 2018.  Dkt. No. 19.  Epic explained that Russia does not complete

5    service from American courts under the Hague Convention, and requested service by email.  *Id.*

6    at 4.  Service by email was reasonably calculated to provide actual notice of the lawsuit to Mr.

7    Rak because Mr. Rak's email addresses were linked to his YouTube and Epic accounts, and prior

8    transmissions to those addresses had been successful.  *Id.* at 5.

9         This Court agreed.  On January 29, 2018, this Court granted Epic's motion to serve Mr.

10   Rak by email.  Dkt. No. 24.  Shortly thereafter, Epic served English and Russian-translated

11   versions of the Summons and Complaint on Mr. Rak.  Dkt. No. 25.  Although Mr. Rak responded

12   to this email with a short message, he has not appeared in this lawsuit.  Simpkins Decl. ¶ 3.

13        On March 21, 2018, after Mr. Rak's time to respond to the Complaint expired, Epic

14   requested that the Clerk enter default.  Dkt. No. 26.  The Clerk entered default against Mr. Rak on

15   March 27, 2018.  Dkt. No. 32.

16                              **III.    JURISDICTION**

17        This Court has subject matter jurisdiction over Epic's claims under 28 U.S.C. §§ 1331 and

18   1338 as they arise under federal law.  This Court has personal jurisdiction over Mr. Rak because:

19   (1) Epic served Mr. Rak consistent with Federal Rule of Civil Procedure 4, and (2) Mr. Rak

20   submitted a DMCA counter-notification to YouTube, thus consenting to jurisdiction in the

21   Northern District of California.

22        "A federal court is without personal jurisdiction over a defendant unless the defendant has

23   been served in accordance with Fed. R. Civ. P. 4."  *Travelers Cas. & Sur. Co. of Am. v. Brenneke*,

24   551 F.3d 1132, 1135 (9th Cir. 2009).  However, the plaintiff need not follow Rule 4 to the letter;

25   substantial compliance is sufficient to meet this requirement.  *See United Food & Comm.*

26   *Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984) (explaining that Rule 4

27   "should be liberally construed so long as a party receives sufficient notice of the complaint").

28   Epic complied with Rule 4 here.  As the Court explained in its Order Granting Plaintiff's Motion

1  for Leave to Serve Defendant Konstantin Vladimirovich Rak by Email, a court in its discretion

2  may permit service upon a foreign defendant by any means not prohibited by international

3  agreement.  Fed. R. Civ. P. 4(f)(3).  There are no international agreements prohibiting service by

4  email in Russia.  *See, e.g.*, *Wilens v. Automattic, Inc.*, No. C 14-02419 LB, 2015 WL 498745, at

5  \*5 (N.D. Cal. Feb. 5, 2015).  Service by email was likewise "reasonably calculated, under all the

6  circumstances, to appraise interested parties of the pendency of the action," *Rio Props., Inc. v. Rio*

7  *Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002), because Mr. Rak submitted a DMCA

8  counter-notification that listed his email addresses and expressly stated that he would "accept

9  service of process" from U.S. Courts, *Ultra Records, LLC v. Teoh*, No. 16-cv-9996 (DLC), 2017

10 WL 1753485, at \*1–2 (N.D. Cal. Feb. 5, 2015); Atamas Decl. Ex. E.  Email service satisfied Rule

11 4 in this case.

12        This Court has personal jurisdiction over Mr. Rak because he submitted a DMCA counter-

13 notification to YouTube in which he consented to jurisdiction in the Northern District of

14 California.  The counter-notification provides:  "I consent to the jurisdiction of the Federal

15 District Court for the district in which my address is located, or if my address is located outside of

16 the United States, the judicial district in which YouTube is located . . . ."  Atamas Decl. Ex. E.

17 Mr. Rak's address is in Russia.  *Id.*  YouTube is located in the Northern District of California.

18 *Tecnologias Avanzadas RD, SRL v. Riegler*, Case No. 16-cv-06701, 2017 WL 2772301, at \*2

19 (N.D. Cal. June 1, 2017).  Mr. Rak therefore consented to personal jurisdiction in the Northern

20 District of California.  *Id.* ("Judges in this district have previously found that they have personal

21 jurisdiction over defendants who submitted identical counter-notifications to YouTube.").

22                          **IV.    ARGUMENT**

23        After the Clerk enters a defendant's default, the well-pleaded factual allegations of the

24 complaint are taken as true.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th

25 Cir. 1987).  If these factual allegations provide a sufficient legal basis for entry of a default

26 judgment on liability, the court then conducts an inquiry to ascertain the amount of damages.  *See*

27 *Bittorrent, Inc. v. Bittorrent Mktg. GMBH*, No. 12-cv-02525, 2014 WL 5773197, at \*8 (N.D. Cal.

28 Nov. 5, 2014).  Here, Epic's well-pleaded factual allegations establish that Mr. Rak is liable for

copyright infringement, trademark infringement and false designation of origin, and the *Eitel* factors strongly favor default judgment in this case. Finally, Epic's evidence and argument establish that it is entitled to a permanent injunction against Mr. Rak.

**A.    Mr. Rak is Liable for Copyright Infringement, Trademark Infringement and False Designation of Origin**[2]

**1.    Copyright Infringement**

To establish copyright infringement, the plaintiff must "(1) 'show ownership of the allegedly infringing material' and (2) 'demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under'" the Copyright Act. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (citation omitted); *see also Broadcast Music, Inc. v. Roascio*, No. C 12-04740 LB, 2013 WL 12303238, at *4 (N.D. Cal. July 18, 2013) (Report & Recommendation), *adopted*, 2013 WL 12303204 (N.D. Cal. Aug. 15, 2013). "Rights under the Copyright Act include the right to reproduce the copyrighted work, to prepare derivative works based upon the copyrighted work, to distribute copies of the work[,] . . . to display the copyrighted work publicly," and to perform the copyrighted work publicly. *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, Civ. No. 12-5543, 2014 WL 1153780, at *7 (N.D. Cal. Mar. 20, 2014) (order adopting Report & Recommendation); 17 U.S.C. § 106(4).

Here, Epic alleged that it "is the author and owner of all copyrights in Fortnite, including but not limited to its maps, items, characters, user interface, and software." Compl. ¶ 18. Epic owns copyright registrations covering Fortnite. Atamas Decl. Exs. A & B. These registrations are prima facie evidence that Epic owns valid copyrights in the Fortnite game and the visual displays it produces. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488–89 (9th Cir. 2000); *Clarity Software, LLC v. Allianz Life Ins. Co. of N. Am.*, No. 2:04-cv-1441, 2006 WL 2346292, at *7 (W.D. Pa. Aug. 11, 2006) (copyright registration in the software's source also creates copyright protection for screen displays associated with that code).

---

[2] Epic's complaint also asserted claims for breach of contract, contributory copyright infringement and California unfair competition. Epic will not to move for entry of judgment on those claims, and they should be dismissed.

Epic sufficiently alleged that Mr. Rak violated at least one exclusive right granted to Epic under 17 U.S.C. § 106.  Mr. Rak's software cheat created an unauthorized derivative work of Fortnite:  to use the cheat, Mr. Rak (and other cheaters) "injected" the cheat's computer code into the copyrighted Fortnite code, which modified the Fortnite code and created a new derivative work.  *See* Atamas Decl. Ex. D.  This violated the Copyright Act.  *See Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1111–12 (9th Cir. 1998) (levels of computer game burned onto a CD disk are derivative works in part because the levels manipulated the game code to create an altered visual display).

Mr. Rak violated Epic's § 106 rights in a second way:  Mr. Rak posted a video on YouTube to advertise and demonstrate his software cheat.  Compl. ¶ 60.  The video showed full-screen gameplay of Fortnite, Compl. ¶ 67, including but not limited to copyright-protected elements such as the glider players use to access the island and the unique building aspects of the game, Atamas Decl. Ex. D.  *See Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co. Ltd.*, 15-cv-04084-CRB, 2018 WL 1242053, at *5 (N.D. Cal. Mar. 8, 2018) (finding similar elements of a video game copyrightable, and denying defendant's motion to dismiss); *Clarity Software, LLC*, 2006 WL 2346292, at *7.  Epic did not authorize Mr. Rak to publicly perform a work containing these copyrighted elements, and his doing so therefore violated the Copyright Act.  *See Broadcast Music*, 2013 WL 12303238, at *4 (copyright claim shown on default judgment where defendant played copyrighted songs in her store without authorization); *Valve Corp. v. Sierra Entm't Inc.*, 431 F. Supp. 2d 1091, 1097, 1102 (W.D. Wash. 2004) (rejecting defendant's argument that "playing video games in public is not a public performance").

**2.    Trademark Infringement**

To prevail on a claim for trademark infringement under 15 U.S.C. § 1114, a plaintiff must establish that:  (1) it owns the trademark at issue; (2) the defendant used in commerce without authorization "any reproduction, counterfeit, copy, or colorable imitation of the" mark "in connection with the sale, offering for sale, distribution, or advertising of any goods and services"; and (3) defendant's use of the mark is likely to cause confusion or to cause mistake or to deceive.  *See* 15 U.S.C. § 1114(1); *Yelp v. Catron*, 70 F. Supp. 3d 1082, 1094 (N.D. Cal. 2014).  For the

1   following reasons, Epic's allegations provide a sufficient legal basis for entry of default on its

2   trademark infringement claim.

3          First, Epic owns the trademark at issue.  Specifically, Epic owns the FORTNITE mark,

4   which it has used in commerce since 2013.  Compl. ¶ 21; Atamas Decl. Ex. C.  Epic's

5   "registration of [this] mark on the Principal Register in the Patent and Trademark Office

6   constitutes prima facie evidence of the validity of the registered mark and of [Epic's] exclusive

7   right to use the mark on the goods and services specified in the registration."  *Brookfield*

8   *Commc'ns, Inv. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

9          Second, Mr. Rak used the FORTNITE mark in commerce without authorization.  Mr. Rak

10  posted a video on YouTube of Fortnite gameplay that featured the FORTNITE mark to promote a

11  cheat that enabled him and other cheaters to gain an unfair advantage in Fortnite vis-à-vis

12  legitimate players, making the game unfair and costing Epic hard-earned consumer loyalty.

13  Compl. ¶ 62; Atamas Decl. Ex. D.  Epic did not authorize this use.  Compl. ¶ 65.

14         Third, Mr. Rak's use of the FORTNITE mark in his cheat video was likely to cause

15  confusion among consumers as to the video's association with Epic.  Courts in the Ninth Circuit

16  use the eight factors identified in *AMF, Inc. v. Sleekcraft Boats* to determine whether consumer

17  confusion is likely.  599 F.2d 341, 349 (9th Cir. 1979).  Here, Epic alleged that Mr. Rak displayed

18  the FORTNITE trademark in connection with his cheat-promoting video without Epic's consent

19  in a manner that is likely to cause confusion, mistake, or to deceive.  Compl. ¶¶ 62, 65, 109–10.

20  These allegations are sufficient to establish trademark infringement.  *See Yelp*, 70 F. Supp. 3d at

21  1095 (default judgment on § 1114(a) claim was proper when plaintiff alleged that defendant

22  "displayed the Yelp Marks prominently on adblaze.com and BuyYelpReview.com in connection

23  with his business, because he was selling Yelp reviews"); *Yahoo! Inc. v. XYZ Cos.*, 872 F. Supp.

24  2d 300, 304 (S.D.N.Y. 2011) (defendant counterfeited Yahoo!'s trademark by displaying an

25  identical version of the mark in fraudulent emails).  An ordinary consumer encountering Epic's

26  mark in Mr. Rak's video would likely be confused as to that video's affiliation with Epic.  *See*

27  Compl. ¶¶ 109–10.  This element is therefore satisfied.

28

MEM. OF POINTS & AUTH.
ISO DEFAULT JUDGMENT MOTION
Case No. 3:17-cv-06223-LB

### 3.     False Designation of Origin

Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1), creates a cause of action for false designation of origin. *See Sleep Science Partners v. Lieberman*, No. 09-04299 CW, 2010 WL 1881770, at *2 (N.D. Cal. May 10, 2010) (Section 1125(a)(1) "proscribes 'the use of false designations of origin, false descriptions, and false representations in the advertising and sale of goods and services.'" (citation omitted)).  "To establish a claim for trademark infringement or false designation of origin under Section 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A), a plaintiff must prove that the defendant (1) used in commerce (2) any word, false designation of origin . . . (3) which is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Oppenheimer v. Allvoices, Inc.*, No. 14-cv-00499 LB, 2014 WL 2604033, at *10 (N.D. Cal. June 10, 2014).  The elements of false designation of origin therefore largely track those of trademark infringement. *See id.*; *see also JL Beverage Co., LLC v. Jim Beam Brands, Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (*Sleekcraft* factors apply to false designation of origin claims).

Here, Mr. Rak used Epic's FORTNITE mark in his video in a manner that was likely to confuse consumers. *See* Compl. ¶¶ 62, 114–19.  For the reasons stated above regarding trademark infringement, the merits and sufficiency of Epic's allegations favor entering default judgment on Epic's claims for false designation of origin under § 1125(a). *See JL Beverage Co.*, 828 F.3d at 1104–05 (analyzing false designation of origin and trademark claims together).

## B.     The Eitel Factors Strongly Favor Entry of Default Judgment

Courts consider the following factors when deciding whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *Broadcast Music*, 2013 WL 12303238, at *3.  "In applying this discretionary standard, default judgments are more often granted than denied." *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).

1    Here, the *Eitel* factors strongly favor entry of default judgment.  Epic unquestionably

2    would suffer prejudice "if the [C]ourt does not enter default judgment because it would be left

3    without recourse to recover for the harm already inflicted by [Mr. Rak] and to prevent future

4    infringement" of its valuable intellectual property.  *Yelp*, 70 F. Supp. 3d at 1094; *see also, e.g.*,

5    Compl. ¶¶ 94-95 (alleging harm inflicted by Mr. Rak); Atamas Decl. ¶¶ 8–9 (same).  Epic's

6    Complaint properly alleged the necessary elements for each cause of action, and Epic

7    supplemented its allegations with declarations and exhibits establishing Mr. Rak's liability on its

8    claims.  *See, e.g.*, Atamas Decl.; Simpkins Decl.  This satisfies *Eitel* factors two and three, which

9    require only that "a plaintiff 'state a claim on which [] [it] may recover.'"  *PepsiCo, Inc. v. Cal.*

10   *Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).  As for the fourth *Eitel* factor, Epic does

11   not seek damages, but rather seeks an injunction that is tailored to the specific harm it suffered,

12   making default judgment appropriate.  *Broadcast Music*, 2013 WL 12303238, at *4.  "There is

13   unlikely to be a dispute concerning material facts in this action because [Mr. Rak] has not

14   answered."  *Bittorrent*, 2014 WL 5773197, at *10.  Moreover, "it is clear that [Mr. Rak's] default

15   is not due to excusable neglect, as [Epic] has served" the Complaint, Summons, and all relevant

16   filings on him (and will serve this motion on him as well).  *Id.*  As to the final *Eitel* factor, Mr.

17   Rak's failure to answer Epic's Complaint makes resolution on the merits impossible.  *See Cal.*

18   *Sec. Cans*, 238 F. Supp. 2d at 1177.

19   **C.    Epic is Entitled to a Permanent Injunction**

20           Having established Mr. Rak's liability, Epic is entitled to a permanent injunction to

21   prevent Mr. Rak from engaging in any future infringement of Epic's copyrights or trademarks.

22   Injunctive relief is an equitable remedy, and district courts therefore have broad discretion to

23   impose injunctive relief and craft the scope of an injunction to the particular facts of the case.  *See*

24   *Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 953 (N.D. Cal. 2009).  "The Copyright Act, 17

25   U.S.C. § 502(a), allows a court to 'grant temporary and final injunctions on such terms as it may

26   deem reasonable to prevent or restrain infringement of a copyright.'"  *Broadcast Music*, 2013 WL

27   12303238, at *6.  "As a general rule, a permanent injunction will be granted when liability has

28   been established and there is a threat of continuing violations."  *Id.* (citing *MAI Sys. Corp. v. Peak*

1   *Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993)).  Under the Lanham Act, district courts may

2   issue permanent injunctions "to prevent the violation of any right of the registrant of a mark

3   registered in the Patent and Trademark Office or to prevent a violation under subsections (a), (c),

4   or (d) of section 1125 of this title."  15 U.S.C. § 1116(a); *Reno Air Racing Ass'n, Inc. v. McCord*,

5   452 F.3d 1126, 1137–38 (9th Cir. 2006).  In deciding whether to issue a permanent injunction,

6   courts consider whether (1) plaintiff has suffered irreparable injury, (2) "remedies available at

7   law, such as monetary damages, are inadequate to compensate for that injury," (3) in light of "the

8   balance of hardships between plaintiff and defendant, a remedy in equity is warranted," and (4) a

9   permanent injunction is in the public's interest.  *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388,

10  391 (2006).

11      These factors militate in favor of a permanent injunction here.  Epic has established

12  irreparable injury in the form of damage to its reputation and goodwill from Mr. Rak's promotion

13  of a cheat using Epic's trademark and copyright-protected material.  Compl. ¶ 113; Atamas Decl.

14  ¶¶ 8–9.  Cheats, including Mr. Rak's cheat, harm Epic by giving cheaters advantages over other

15  Fortnite players.  Atamas Decl. ¶ 8.  This degrades the level of play in the game and harms Epic's

16  carefully cultivated reputation for creating excellent, competitive games.  Atamas Decl. ¶ 9. There

17  is no adequate remedy at law for this harm because monetary relief will not enable Epic to rebuild

18  the business goodwill it has lost as a result of Mr. Rak's cheat and others like it.  *Id.*; *see also*

19  *Microsoft Corp. v. Buy More, Inc.*, 136 F. Supp. 3d 1148, 1158 (C.D. Cal. 2015) (damage to

20  goodwill "constitutes irreparable harm that cannot be compensated by monetary damages");

21  *Herman Miller Inc. v. Alphaville Design Inc.*, No. C 08-03407 WHA, 2009 WL 3429739, at *8

22  (N.D. Cal. Oct. 22, 2009) (permanent injunction appropriate when defendant's "infringement has

23  caused irreparable injury by hurting the goodwill" of plaintiff's brand).

24      The balance of hardships also tips in Epic's favor:  Mr. Rak is "in default and has not

25  demonstrated that [he] would incur any hardship from being permanently enjoined against

26  infringing [Epic's] trademark" or copyrights.  *Bittorrent*, 2014 WL 5773197, at *13.  "[T]here is

27  also a threat of continuing violations," as "it would be relatively easy for [Mr. Rak] to continue to

28  infringe" Epic's copyrights and trademark by posting another video to YouTube.  *Broadcast*

MEM. OF POINTS & AUTH.
ISO DEFAULT JUDGMENT MOTION
Case No. 3:17-cv-06223-LB

1  *Music*, 2013 WL 12303238, at \*6.  And Mr. Rak's "refusal to answer or appear in this action

2  makes it difficult for plaintiff to prevent further infringement."  *Herman Miller*, 2009 WL

3  3429739, at \*8; *see also Broadcast Music*, 2013 WL 12303238, at \*6 (that defendant failed to

4  appear weighed in favor of granting injunction).  Finally, a permanent injunction would serve the

5  public interest as it would prevent Mr. Rak from deceiving consumers about his affiliation with

6  Epic and using cheats to degrade Fortnite and harm legitimate gamers.  *Wecosign, Inc. v. IFG*

7  *Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) ("the balance of the hardships favors

8  Plaintiff because without an injunction, Plaintiff will lose profits and goodwill, while an

9  injunction will only proscribe Defendants' infringing conduct").

10                                    **V.    CONCLUSION**

11         Mr. Rak developed, used and disseminated a software cheat that degraded the quality of

12  gameplay in Epic's popular Fortnite game, harming Epic.  The cheat altered the Fortnite game

13  code and created an unauthorized derivative work of the game.  Mr. Rak used Epic's trademark

14  and copyright-protected material to advertise the cheat on YouTube, which was likely to cause

15  consumer confusion as to the cheat's source.  Mr. Rak's actions constitute trademark

16  infringement, copyright infringement, and false designation of origin.  Epic's goodwill and

17  business reputation were harmed by Mr. Rak's cheat.  For these reasons, Epic respectfully

18  requests that this Court enter an injunction against Mr. Rak to protect Epic against any future

19  unlawful activity.

20  DATED:  April 20, 2018                          **PERKINS COIE LLP**

21

22                                                  By: *Holly M. Simpkins*

23                                                      Holly M. Simpkins (*pro hac vice*)
                                                        HSimpkins@perkinscoie.com

24                                                      Attorney for Plaintiff
                                                        Epic Games, Inc. and Epic International
25                                                      S.à.r.l.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PROOF OF SERVICE**

I am employed in King County, Washington.  I am over the age of 18 and not a party to the within action.  My business address is 1201 Third Avenue, Suite 4900, Seattle, Washington 98101.  On April 20, 2018, I served the following documents:

- Motion and Notice of Motion and Memorandum of Points and Authorities In Support of Motion for Default Judgment Against Defendant Konstantin Vladimirovich Rak
- Declaration of Michael Atamas and Exhibits
- Declaration of Holly M. Simpkins and Exhibits
- [Proposed] Final Judgment and Permanent Injunction

X    (BY ELECTRONIC MAIL) I caused a copy of the documents described above to be sent to the person(s) at the email address(es) listed below.  I did not receive, within a reasonable time after the submission, any electronic message or other indication that the transmission was unsuccessful.

Konstantin Vladimirovich Rak
konstantin.rak1@gmail.com
rak13@spaces.ru

I declare under penalty of perjury under the laws of the United States that the above is true and correct.  Executed on April 20, 2018, at Seattle, Washington.

_June Starr_____
June Starr

MEM. OF POINTS & AUTH.
ISO DEFAULT JUDGMENT MOTION
Case No. 3:17-cv-06223-LB