1

2

3

4

5

6

7

8           UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10                 San Francisco Division

11  EPIC GAMES, INC., et al.,              Case No. 17-cv-06223-LB

12              Plaintiffs,

13      v.                                 **ORDER ADDRESSING PLAINTIFFS'**
                                           **MOTION FOR DEFAULT JUDGMENT**
14  JAMES MENDES, et al.,                  **AGAINST DEFENDANT KONSTANTIN**
                                           **VLADIMIROVICH RAK**
15              Defendants.
                                           Re: ECF No. 33
16

17                      **INTRODUCTION**

18       Plaintiffs Epic Games, Inc. and Epic Games International S.à.r.l. (collectively, "Epic") are the

19  authors of Fortnite, a multiplayer survival-and-building action video game. Epic alleges that the

20  defendants — James Mendes, Konstantin Vladimirovich Rak, and Oleksey Olekseevich Stegailo

21  — created software "cheats" that allow players to modify Fortnite to give themselves unfair

22  competitive advantages over other players, thereby undermining the integrity of Fortnite and

23  ruining the game-play experience for players who play without cheats. Epic brought claims for

24  (1) copyright infringement, 17 U.S.C. § 501 et seq., (2) contributory copyright infringement, 17

25  U.S.C. § 501 et seq., (3) trademark infringement, 15 U.S.C. § 1114, (4) false designation of origin,

26  15 U.S.C. § 1125(a), (5) breach of contract, and (6) violations of the California Unfair

27  Competition law, California Business and Professional Code § 17200 et seq.

28

United States District Court
Northern District of California

1       At issue is Epic's motion for default judgment against Mr. Rak. On January 29, 2018, the

2   undersigned granted Epic leave to serve Mr. Rak with the summons and complaint by email. *Epic*

3   *Games, Inc v. Mendes*, No. 17-cv-06223-LB, 2018 WL 582411 (N.D. Cal. Jan. 29, 2018) (*Epic*

4   *I*).[1] On February 14, 2018, Epic served Mr. Rak with the summons and complaint at his email

5   addresses konstantin.rak1@gmail.com and rak13@spaces.ru.[2] Mr. Rak has not appeared in this

6   action and has not filed a respond to the complaint.[3] After the Clerk of Court entered default,[4] Epic

7   moved for default judgment against Mr. Rak on its direct-copyright-infringement, trademark-

8   infringement, and false-designation-of-origin claims.[5]

9       Epic does not ask for any money damages from Mr. Rak. Instead, it limits its claim for relief to

10  a permanent injunction barring Mr. Rak from using Epic's copyrighted works or trademark in

11  connection with the advertising, demonstration, or distribution of any video, or sale of any goods

12  or services, and/or developing or distributing any item that modifies Epic's protected computer

13  code.

14      The undersigned is inclined to recommend that Epic's motion for default judgment be denied,

15  primarily due to questions regarding the merits of Epic's claims and the sufficiency of its

16  complaint.[6] Before making a recommendation, however, the undersigned grants Epic the

17  opportunity to amend its complaint, file a new motion for default judgment that addresses the

18  deficiencies identified below, or both. If Epic submits any new filings, it must serve on Mr. Rak

19  certified Russian translations of its filings (along with the native English versions) and write a

20  _____

21  [1] ECF No. 24. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

22  [2] Proof of Service – ECF No. 25.

23  [3] *See* Docket.

24  [4] Entry of Default – ECF No. 32.

25  [5] Mot. for Default Judgment – ECF No. 33. Epic did not move for default judgment on its claims for contributory copyright infringement, breach of contract, and the California Unfair Competition Law, and stated that those claims should be dismissed. *Id.* at 12 n.2.

26  [6] A magistrate judge may not exercise jurisdiction under 28 U.S.C. § 636(c)(1) without the consent of all parties. Absent consent, the undersigned will ultimately have to direct the Clerk of Court to

27  reassign the case to a district judge and will make a recommendation on Epic's motion for default judgment. The parties will have an opportunity to object to that recommendation.

28

*United States District Court*
*Northern District of California*

cover letter or email to Mr. Rak in both English and Russian, and must file both the English versions and the certified Russian translations on the docket. To allow Epic time both to prepare its filings and to obtain translations, the undersigned grants Epic 30 days from the date to file an amended complaint or to file a new motion for default judgment if it does not amend its complaint. (If it amends its complaint, it must obtain a new entry of default before it can file a new motion for default judgment.) If Epic does not file an amended complaint or a new motion for default judgment within that timeframe, the undersigned will direct the Clerk of Court to reassign this case to a district judge and will recommend that the newly assigned judge deny Epic's motion for default judgment.

## STATEMENT[7]

Founded in 1991, Epic Games, Inc. is a leading video game developer for PC, console, and mobile platforms.[8] Epic is the author of Fortnite, a multiplayer survival-and-building action video game where players explore, scavenge gear, build fortified structures, and fight waves of monsters who want to kill the player and her friends.[9] Fortnite is an extremely popular game with over ten million players.[10]

### 1. Epic's Fortnite Copyrights

Epic Games, Inc. is the author and owner of all copyrights in Fortnite, including but not limited to its maps, items, characters, user interface, and software.[11] Epic owns copyrights in Fortnite, including U.S. Copyright Registration Nos. TXu 1-895-864, TX 8-186-254, TX 8-254-659, and TX 8-352-178.[12]

---

[7] Unless otherwise noted, the facts recited in the Statement are allegations from the Complaint.

[8] Compl. – ECF No. 1 at 3 (¶ 11).

[9] *Id.* at 2 (¶ 1), 3 (¶ 12).

[10] *Id.* at 3 (¶ 15).

[11] *Id.* at 4 (¶ 18).

[12] *Id.* (¶ 20); Compl. Ex. A – ECF No. 1-1.

**2. Epic's Fortnite Trademark**

Epic began using the FORTNITE mark in commerce at least as early as October 11, 2013.[13] Since its first use, Epic has continually used the FORTNITE mark in connection with video-game software.[14] Epic has invested substantial resources in marketing, advertising, and distributing video games under the FORTNITE mark.[15] Fortnite — the video game bearing the FORTNITE mark — has more than ten million players.[16] Epic has attained substantial goodwill and strong recognition in the FORTNITE mark, and that mark has come to be associated with Epic.[17] Epic owns United States Patent and Trademark Office ("USPTO") Registration No. 4,481,629 for the FORTNITE mark.[18] Epic also has a pending application for FORTNITE, USPTO Serial No. 87,484,706, for use in association with "[e]ntertainment services, namely, providing on-line computer games."[19]

**3. Epic's Contractual Agreements with Users**

To use or access Epic's websites, services, products, or content, a user must agree to Epic's Terms of Service ("Terms").[20] The Terms provide that "[t]he Services, including all content, features, and functionality thereof, are owned by Epic, its licensors, or other providers of such material and are protected by United States and international copyright . . . laws."[21] Additionally, the Terms state that users "are permitted to use the Services for [] personal, non-commercial use only or legitimate business purposes related to [a user's] role as a current or prospective customer

---

[13] Compl. – ECF No. 1 at 4 (¶ 21).

[14] *Id.* (¶ 22).

[15] *Id.* (¶ 23).

[16] *Id.* (¶ 24).

[17] *Id.* (¶ 25).

[18] *Id.* (¶ 27); Compl. Ex. B – ECF No. 1-2.

[19] Compl. – ECF No. 1 at 5 (¶ 28).

[20] *Id.* (¶ 29).

[21] *Id.* (¶ 30).

of Epic. Except as provided below, [users] must not copy, modify, create derivative works of, publicly display, publicly perform, republish, or transmit any of the material obtained through the Services, or delete, or alter any copyright, trademark, or other proprietary rights notices from copies of materials from the Services."[22] Under the Terms, users "must not reproduce, sell, or exploit for any commercial purposes any part of the Services, access to the Services or use of the Services or any services or materials available through the Services."[23] Moreover, users "may use the Services only for lawful purposes and in accordance with these Terms of Service. [Users] agree not to access or use the Services for any purpose that is illegal or beyond the scope of the Services' intended use (in Epic's sole judgment)."[24] Mr. Rak had an account with Epic and agreed to be bound by the Terms by registering that account and by using Epic's services.[25]

To use or play Fortnite, a user must affirmatively accept the Fortnite End User License Agreement ("EULA").[26] The EULA grants users "a personal, non-exclusive, non-transferable, non-sublicensable limited right and license to install and use one copy of the Software on a device for . . . personal entertainment use."[27] Under the EULA, Fortnite users may not, among other things, "use it commercially or for a promotional purpose," "copy, reproduce, distribute, display, or use it in a way that is not expressly authorized in this Agreement," "reverse engineer, derive source code from, modify, adapt, translate, decompile, or disassemble it or make derivative works based on it," or "create, develop, distribute, or use any unauthorized software programs to gain advantage in any online or other game modes."[28] Mr. Rak agreed to abide by the EULA by downloading and accessing Fortnite.[29]

---

[22] *Id.* (¶ 31).

[23] *Id.* (¶ 32).

[24] *Id.* (¶ 33).

[25] *Id.* (¶ 34).

[26] *Id.* (¶ 35).

[27] *Id.* at 6 (¶ 36).

[28] *Id.* (¶ 37).

[29] *Id.* (¶ 38).

United States District Court
Northern District of California

### 4.  The Fortnite Game and Cheating in Fortnite

Fortnite was first released in or about October 2013.[30] Epic publicly released Fortnite's free-to-play "Battle Royale" game mode on or about September 26, 2017.[31] In Fortnite's Battle Royale game mode, players drop into an environment via a glider from a flying battle bus and engage in intense player-versus-player combat until only one player remains standing.[32]

Cheats modify games to give a user an unfair competitive advantage over other players.[33] Cheats give a cheater the power to do or see things that other players cannot do or see.[34] For example, a cheat may enable the user to see through solid objects, teleport, impersonate another player by "spoofing" that player's user name, or make moves other players cannot, such as a spin followed by an instant headshot to another player.[35]

Epic does not allow or support cheats in Fortnite, including in the Battle Royale game mode.[36] Players who use cheats ruin the game play experience for those who play without cheats and undermine the integrity of Fortnite.[37]

### 5.  Mr. Rak's Acts

Mr. Rak downloaded and accessed Fortnite.[38] Mr. Rak created, developed, and/or wrote a software cheat for Fortnite's Battle Royale game mode.[39] Mr. Rak created and posted a video on

---

[30] *Id.* at 3 (¶ 13).

[31] *Id.* (¶ 14).

[32] *Id.* (¶ 16).

[33] *Id.* at 6 (¶ 39).

[34] *Id.* (¶ 40).

[35] *Id.*

[36] *Id.* (¶ 41).

[37] *Id.* (¶ 42).

[38] *Id.* at 8 (¶ 59).

[39] *Id.* (¶ 60).

United States District Court
Northern District of California

1  YouTube to advertise, demonstrate, and distribute his cheat.[40] The video features Epic's

2  FORTNITE mark.[41]

3      To use Mr. Rak's cheat, users must download the cheat and then "inject" the cheat computer

4  code into the copyrighted Fortnite code.[42] Once the cheat is injected into Fortnite, the cheat

5  modifies the copyright-protected game code, altering the game and the experience of those who

6  play it.[43] The game, after being altered by Mr. Rak's cheat, also contains the FORTNITE mark.[44]

7  Epic has not authorized Mr. Rak to use Epic's FORTNITE mark or copyrighted work in this

8  manner.[45]

9      In or about October 2017, Mr. Rak posted a video along with a post on YouTube that was

10  available at http://www.youtube.com/watch?v=9gcP1eElxsU ("Rak Video") that demonstrated

11  and provided a link to download his cheat.[46] The Rak Video and associated post contained

12  instructions on how to download and install the cheat and showed full-screen gameplay using the

13  cheat.[47] On or about October 17, 2017, Epic submitted a takedown notice to YouTube for the Rak

14  Video under the Digital Millennium Copyright Act ("DMCA").[48] YouTube took down the Rak

15  Video.[49] On or about October 23, 2017, Mr. Rak submitted a counter-notification under the

16  DMCA to YouTube for the Rak Video.[50] Epic does not allege that YouTube ever put the Rak

17  Video back up. As of the date of this order, the Rak Video remains down, with a message that

18  reads, "This video is no longer available due to a copyright claim by Epic Games, Inc.." [sic]

19

20  [40] *Id.* (¶ 61).

21  [41] *Id.* (¶ 62).

22  [42] *Id.* (¶ 63).

    [43] *Id.*

23  [44] *See id.* (¶ 64).

24  [45] *Id.* (¶ 65).

25  [46] *Id.* (¶ 66).

26  [47] *Id.* (¶ 67).

27  [48] *Id.* at 9 (¶ 68).

    [49] *Id.* (¶ 69).

28  [50] *Id.* (¶ 70).

## 6. Procedural History

On October 27, 2017, Epic filed its complaint, alleging six claims: (1) copyright infringement, 17 U.S.C. § 501 et seq., (2) contributory copyright infringement, 17 U.S.C. § 501 et seq., (3) trademark infringement, 15 U.S.C. § 1114, (4) false designation of origin, 15 U.S.C. § 1125(a), (5) breach of contract, and (6) violations of the California Unfair Competition law, California Business and Professional Code § 17200 et seq.

Mr. Rak's DMCA counter-notification listed a physical address in Russia.[51] Mr. Rak's counter-notification also listed an email address, konstantin.rak1@gmail.com.[52] Mr. Rak's counter-notification also stated that Mr. Rak "consent[s] to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United States, the judicial district in which YouTube is located, and will accept service of process from [Epic]."[53] Epic also identified a second email address associated with Mr. Rak, rak13@spaces.ru, which is the email address associated with Mr. Rak's Epic user account.[54]

Epic moved for leave to serve the summons and complaint on Mr. Rak via email at konstantin.rak1@gmail.com and rak13@spaces.ru pursuant to Federal Rule of Civil Procedure 4(f)(3).[55] On January 29, 2018, the undersigned granted Epic leave to serve Mr. Rak via email, provided that it translated the summons and complaint into Russian before serving them on Mr. Rak and wrote its cover email to Mr. Rak in both English and Russian. *Epic I*, 2018 WL 582411. On February 14, 2018, Epic served a certified Russian translation of the summons and complaint on Mr. Rak via email.[56] Mr. Rak responded to Epic's email but has not appeared in this action or

---

[51] Mot. to Serve Rak via Alternative Means – ECF No. 19 at 4; Atamas Decl. Ex. A (Rak Counter-Notification) – ECF No. 21-1 at 2.

[52] Mot. to Serve Rak via Alternative Means – ECF No. 19 at 4; Atamas Decl. Ex. A (Rak Counter-Notification) – ECF No. 21-1 at 2.

[53] Atamas Decl. Ex. A (Rak Counter-Notification) – ECF No. 21-1 at 2.

[54] Atamas Decl. – ECF No. 21 at 2 (¶ 3).

[55] Mot. to Serve Rak via Alternative Means – ECF No. 19.

[56] Proof of Service – ECF No. 25.

United States District Court
Northern District of California

filed a response to the complaint.[57] Epic moved for entry of default, and on March 27, 2018, the Clerk of Court entered default against Mr. Rak.[58] On April 20, 2018, Epic moved for default judgment on its direct-copyright-infringement, trademark-infringement, and false-designation-of-origin claims and asked the court to enter a permanent injunction against Mr. Rak.[59] Epic served its motion for default judgment by email on Mr. Rak at konstantin.rak1@gmail.com and rak13@spaces.ru.[60]

## JURISDICTION AND SERVICE

Before entering a default judgment, a court must determine whether it has subject-matter jurisdiction over the action and personal jurisdiction over the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). A court also must ensure the adequacy of service on the defendant. *See Timbuktu Educ. v. Alkaraween Islamic Bookstore*, No. C 06-0325 JSW, 2007 WL 1544790, at *2 (N.D. Cal. May 25, 2007).

The court has subject-matter jurisdiction because Epic brings claims for copyright and trademark infringement under 17 U.S.C. § 501 et seq., 15 U.S.C. § 1114, and 15 U.S.C. § 1125(a), and therefore invokes federal-question jurisdiction. *See* 28 U.S.C. § 1331.

The court has personal jurisdiction over Mr. Rak because he submitted a DMCA counter-notification in which he expressly stated that he "consent[s] to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United States, the judicial district in which YouTube is located[.]"[61] Mr. Rak's address on his DMCA counter-notification was outside of the United States.[62] YouTube is located in the

---

[57] Simpkins Decl. – ECF No. 35 at 2 (¶ 3).

[58] Entry of Default – ECF No. 32.

[59] Mot. for Default Judgment – ECF No. 33.

[60] *Id.* at 19. It is unclear if Epic served Mr. Rak with a Russian translation of its default-judgment motion or only an English version.

[61] Atamas Decl. Ex. A (Rak Counter-Notification) – ECF No. 21-1 at 2.

[62] *Id.*

United States District Court
Northern District of California

1  Northern District of California.[63] Mr. Rak thus has consented to personal jurisdiction here. *See,*

2  *e.g.*, *Technologias Avanzadas RD, SRL v. Riegler*, No. 16-cv-06701-EDL, 2017 WL 2772301, at

3  *2 (N.D. Cal. June 1, 2017) (holding that sending a DMCA counter-notification is an "affirmative

4  act" by a defendant that constitutes consent to personal jurisdiction); *Crunchyroll, Inc. v. Pledge*,

5  No. C 11-2334 SBA, 2014 WL 1347492, at *9 (N.D. Cal. Mar. 31, 2014) (same).

6       Mr. Rak was adequately served with the summons and complaint. Mr. Rak submitted a DMCA

7  counter-notification in which he expressly stated that he "will accept service of process from

8  [Epic]."[64] Relying on that consent, the court previously granted leave for Epic to serve Mr. Rak

9  via email pursuant to Federal Rule of Civil Procedure 4(f)(3). *Epic I*, 2018 WL 582411.

10 Additionally, the court ordered Epic to provide a certified translation of the summons and

11 complaint into Russian before serving them on Mr. Rak and to write its cover email to Mr. Rak in

12 both English and Russian. *Id.* at *3. Epic timely served a certified Russian translation of the

13 summons and complaint on Mr. Rak via email in compliance with this order.[65] Service was

14 therefore proper. *See id.* at *2 ("in similar cases, courts have allowed plaintiffs to serve summons

15 and complaints by email to Russian parties" and "[w]here, as here, a defendant has submitted a

16 DMCA counter-notice that lists his or her email address and that expressly states that he or she

17 'will accept service of process,' courts have allowed plaintiffs to serve the summons and

18 complaint on that email and have held that such service comports with due process") (citing *Ultra

19 Records, LLC v. Teoh*, No. 16cv9996 (DLC), 2017 WL 1753485, at *2 (S.D.N.Y. Apr. 18, 2017);

20 *Rosen v. Imagevenue.com*, No. CV 13-01742 (MANx), 2014 WL 12601326, at *2–3 (C.D. Cal.

21

22 [63] Compl. – ECF No. 1 at 9 (¶ 72); *accord, e.g.*, *Shropshire v. Canning*, No. 10-CV-01941-LHK, 2011
   WL 90136, at *1 (N.D. Cal. Jan. 11, 2011) (YouTube is located in the Northern District of California).

23 [64] Atamas Decl. Ex. A (Rak Counter-Notification) – ECF No. 21-1 at 2.

24 [65] Proof of Service – ECF No. 25. Epic served the summons and complaint on Mr. Rak via email 110
   days after it filed its complaint. *See id.* Because Mr. Rak is not located within the United States, the
25 90-day time limit for service in Federal Rule of Civil Procedure 4(m) does not apply. *Lucas v. Natoli*,
   936 F.2d 432, 432 (9th Cir. 1991). Courts can "'set[] a reasonable time limit for service in a foreign
26 country to properly manage a civil case.'" *Inst. of Cetacean Research v. Sea Shepherd Conservation
   Soc'y*, 153 F. Supp. 3d 1291, 1320 (W.D. Wash. 2015) (quoting *Baja Devs. LLC v. TSD Loreto
27 Partners*, No. CV-09-756-PHX-LOA, 2009 WL 2762050, at *1 (D. Ariz. Aug. 28, 2009)). Epic has
   served Mr. Rak within a reasonable time here.

28

1    Aug. 11, 2014); *Xcentric Ventures, LLC v. Karsen, Ltd.*, No. CV 11-1055-PHX-FJM, 2011 WL

2    3156966, at *2 (D. Ariz. July 26, 2011)).

3

4                              **DEFAULT-JUDGMENT ANALYSIS**

5        Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for a

6    default judgment against a defendant who has failed to plead or otherwise defend an action. *See*

7    *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986). After entry of default, well-pleaded

8    allegations in the complaint regarding liability and entry of default are taken as true, except as to

9    damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys., Inc. v.*

10   *Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). The court need not make detailed findings of

11   fact. *Combs*, 285 F.3d at 906. Default judgment cannot differ in kind from or exceed the amount

12   demanded in the pleadings. Fed. R. Civ. P. 54(c).

13       A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment.

14   *Draper*, 792 F.2d at 924–25. That decision lies within the court's discretion. *Pepsico, Inc. v. Cal.*

15   *Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). Default judgments are generally

16   disfavored because "[c]ases should be decided upon their merits whenever reasonably possible."

17   *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (citing *Pena v. Seguros La Comercial, S.A.*,

18   770 F.2d 811, 814 (9th Cir. 1985)). In deciding whether to enter a default judgment, courts in the

19   Ninth Circuit consider: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's

20   substantive claim[s], (3) the sufficiency of the complaint, (4) the sum of money at stake in the

21   action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was

22   due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil

23   Procedure favoring decisions on the merits." *Id.* at 1471–72. "Of all the *Eitel* factors, courts often

24   consider the second and third factors to be the most important." *Mohanna v. Bank of America,*

25   *N.A.*, No. 16-cv-01033-HSG, 2017 WL 976015, at *3 (N.D. Cal. Mar. 14, 2017) (internal

26   quotation marks omitted) (citing cases). Here, some of the *Eitel* factors favor Epic but the majority

27   of them — including, significantly, the second and third factors — do not.

28

United States District Court / Northern District of California

United States District Court
Northern District of California

1

### 1. The Possibility of Prejudice to the Plaintiff (First *Eitel* Factor)

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and whether such potential prejudice to the plaintiff weighs in favor of granting a default judgment. Mr. Rak has not filed a response to the complaint or defended this action. If Mr. Rak is engaging in activity that violates Epic's rights, Epic may be without recourse absent a default judgment. On the other hand, if Mr. Rak's allegedly infringing material has been deleted and Mr. Rak is not engaging in activity that violates Epic's rights, Epic's request for injunctive relief might be moot. *Cf. Luxul Tech. Inc. v. NectarLux, LLC*, No. 14-CV-03656-LHK, 2016 WL 3345464, at *13 (N.D. Cal. June 16, 2016) (deletion of allegedly infringing materials renders request for injunctive relief moot) (citing *Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1100 (9th Cir. 2001)).[66] As of the date of this order, the Rak Video has been taken off of YouTube, and Epic does not allege that Mr. Rak has been engaging in any other infringing activity. It therefore appears that Epic may have already obtained at least some of the relief it seeks. This factor is, at best, neutral, and does not weigh strongly in favor default judgment.

### 2. The Merits and Sufficiency of the Claims (Second and Third *Eitel* Factors)

The second and third *Eitel* factors consider the merits of the claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. "The Ninth Circuit has suggested that [these factors] . . . require that plaintiffs' allegations 'state a claim on which the [plaintiff] may recover.'" *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). "[W]hen seeking a default judgment, a plaintiff should provide the Court with points and authorities containing citations to authority showing that the plaintiff's claim or claims include allegations of all the necessary

---

[66] Even if a defendant stops his infringing activity, injunctive relief may be warranted where there is no assurance that the defendant will continue to not infringe going forward. *See U.S.A. Futsal Fed'n v. USA Futsal LLC*, No. 17-cv-04206-LB, 2018 WL 2298868, at *15 (N.D. Cal. May 21, 2018) (citing *E & J Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 457, 468 (N.D. Cal. 1991)). There is nothing in the record indicating whether that is or is not the case with respect to Mr. Rak.

1   elements required for entitlement to relief. It is the [plaintiff]'s burden to demonstrate to the Court

2   that under the pertinent law, the plaintiff's claims, as alleged, are legally sufficient." *Very Music*

3   *Inc. v. Kid Glove Prods., Inc.*, No. EDCV 12-4891 JGB (FFMx), 2016 WL 6674991, at *3 (C.D.

4   Cal. Apr. 28, 2016) (quoting *S.A. ex. rel. L.A. v. Exeter Union Sch. Dist.*, No. 1:09-cv-00834 AWI

5   GSA, 2009 WL 1953462, at *3 (E.D. Cal. July 7, 2009)).

6   Epic moves for default judgment against Mr. Rak on three of its six claims: (1) direct

7   copyright infringement, (2) trademark infringement, and (3) false designation of origin.

8   **2.1   Copyright Infringement**

9   "To establish direct copyright infringement, [a plaintiff] must (1) 'show ownership of the

10   allegedly infringed material' and (2) 'demonstrate that the alleged infringers violate at least one

11   exclusive right granted to copyright holders under 17 U.S.C. § 106.'" *Disney Enters., Inc v.*

12   *VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*,

13   508 F.3d 1146, 1159 (9th Cir. 2007)).

14   **2.1.1   The right to prepare derivative works based upon a copyrighted work**

15   Epic first argues that Mr. Rak violated its exclusive right "to prepare derivative works based

16   upon the copyrighted work[.]" 17 U.S.C. § 106(2). Epic alleges that Mr. Rak's cheat "injects" the

17   cheat's computer code into its copyrighted Fortnite code, thereby modifying the Fortnite code and

18   creating a new derivative work.[67]

19   "To prove a claim of direct copyright infringement, a plaintiff must show that he owns the

20   copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights

21   under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (citing *A&M*

22   *Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)). Epic does not allege that Mr.

23   Rak himself violated its right to prepare derivative works. Epic alleges that users can download

24   Mr. Rak's cheat and then "inject" the cheat into Fortnite code, but it does not allege that Mr. Rak

25

26

27   ───────────────

[67] Mot. for Default Judgment – ECF No. 33 at 13.

28

*United States District Court*
*Northern District of California*

1    himself injected the cheat into Fortnite code or created an unauthorized derivative work.[68] On this

2    theory, the second and third *Eitel* factors weigh against granting default judgment.

3         **2.1.2    The right to perform a copyrighted work publicly**

4         Epic next argues that Mr. Rak violated its exclusive right "in the case of . . . audiovisual

5    works, to perform the copyrighted work publicly." 17 U.S.C. § 106(4). Epic alleges that it is the

6    author and owner of all copyrights in Fortnite, including but not limited to its maps, items,

7    characters, user interface, and software, and that the Rak Video showed full-screen gameplay of

8    Fortnite and thereby infringed upon Epic's right to "perform" Fortnite.[69] Epic's theory raise a

9    number of questions that its motion and the authorities cited therein do not fully address. Epic has

10   therefore not met its burden of demonstrating to the court that under the pertinent law, its claims,

11   as alleged, are legally sufficient. *Cf. Very Music*, 2016 WL 6674991, at *3.

12        **2.1.2.1    The scope of Epic's copyright**

13        First, it is not clear exactly what the scope of Epic's copyright is or how far it extends.

14        Epic says that it has registered copyrights in Fortnite and cites to *Three Boys Music Corp. v.*

15   *Bolton*, 212 F.3d 477 (9th Cir. 2000) for the proposition that "[r]egistration is prima facie evidence

16   of the validity of a copyright." *Id.* at 488–89. That is true, but it is somewhat beside the point; the

17   question is not whether Epic's copyright in the Fortnite game is valid, but how far its copyright in

18   the game extends. Epic argues that its copyright in the Fortnite game "also creates copyright

19   protection for screen displays associated with that code," citing *Clarity Software, LLC v. Allianz*

20   *Life Insurance Co. of North America*, No. 2:04-cv-1441, 2006 WL 2346292 (W.D. Pa. Aug. 11,

21   2016).[70] But that case noted that "[c]ourts have reached varying conclusions regarding whether an

22   application for a copyright in source code also creates copyright protection for screen displays."

23   *Id.* at *6; *see id.* at *6–7 (citing cases). Epic does not explain how to navigate this varying case

24   law.

---

25

26   [68] *See* Compl. – ECF No. 1 at 8 (¶ 63).

27   [69] Mot. for Default Judgment – ECF No. 33 at 13.

     [70] *Id.* at 12.

28

1    Additionally, Epic does not allege what exactly Mr. Rak publicly performed or address

2    whether its copyright extends to that performance. On this issue, Epic's complaint says only that

3    the Rak Video "showed full screen gameplay using the cheat," without more.[71] Epic does not

4    allege what the video performs or discuss whether it had copyright, and if so what copyright it

5    had, in what the video shows.[72] Epic's current complaint and motion are insufficient to meet its

6    burden of demonstrating to the court that under the pertinent law, its claims, as alleged, are legally

7    sufficient.

8    ### 2.1.2.2    Video games as public performances

9    Second, there is the more fundamental question of whether playing a video game and posting

10   footage of that gameplay to YouTube, constitutes "perform[ing a] copyrighted work publicly" for

11   the purposes of 17 U.S.C. § 106(4) in the first place. Epic cites only one case in its argument on

12   this issue: *Valve Corp. v. Sierra Entertainment Inc.*, 431 F. Supp. 2d 1091 (W.D. Wash. 2004).[73]

13   But that case is not directly on point. The main issue in *Valve* was breach of contract, not

14   copyright. The plaintiff was a computer-game developer that entered into a contract with a

15   software publisher to sell its computer games at retail. *Id.* at 1093–94. The defendant licensed the

16   plaintiff's game to cyber-cafes. *Id.* at 1094. The parties' main dispute was a contract dispute about

17

18

19   [71] *See* Compl. – ECF No. 1 at 8 (¶ 67). Epic elaborates in its motion that the Rak Video showed
20   "elements such as the glider players use to access the island and the unique building aspects of the
     game." Mot. for Default Judgment – ECF No. 33 at 13. But it does not allege these facts in its
21   complaint — and in its motion, it states that its glider and building aspects are copyright-protected as a
     conclusion. *Id.* (As a note, while the Rak Video is no longer available on YouTube, Epic submitted a
22   copy of it as an exhibit to its default-judgment motion. The video shows a glider for approximately 45
     seconds (from 6:35 to 7:20) of its 14-minutes-and-31-seconds runtime. It is not clear from the video or
23   from Epic's filings what it means by "building aspects" of the game and what portions, if any, of the
     video includes those aspects.)

24   [72] For example, Epic does not discuss if the portions of Fortnite that Mr. Rak performed were artistic
     and therefore more likely copyrightable or purely functional and therefore less. *Cf. Apple Computer,*
25   *Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 & n.10 (9th Cir. 1994) (noting that "graphical user
     interfaces generated by computer programs are partly artistic and partly functional").

26   [73] Epic cites two other cases, *Blizzard Entertainment, Inc. v. Lilith Games (Shanghai) Co. Ltd.*, No. 15-
     cv-04084-CRB, 2018 WL 1242053 (N.D. Cal. Mar. 8, 2018) and *Clarity Software*, 2006 WL 2346292,
27   but neither addressed the question of public performance. Instead, both cases involved a software
     company suing another company for making its own software that copied the plaintiff's software.

28

1    whether the contract allowed the defendant to license the plaintiff's software to cyber-cafes (i.e.,

2    whether cyber-cafe licenses constituted "retail"). *Id.* at 1094–102.

3        The *Valve* parties had a secondary dispute about copyrights. But the right at issue there was the

4    right to distribute software, which is governed by 17 U.S.C. § 106(3), and not the right to publicly

5    perform it, which is governed by 17 U.S.C. § 106(4). *See Valve*, 431 F. Supp. 2d at 1102. *Valve* is

6    therefore not directly on point with respect to Epic's claims here.

7        *Valve* did address, in passing, the right to publicly perform video games. *See id.* at 1097. But

8    its discourse on that subject only raises additional questions about Epic's position. The defendant

9    in *Valve* raised an argument about whether playing video games constituted a public performance

10   and cited to the Ninth Circuit's decision in *Allen v. Academic Games League of America, Inc.*, 89

11   F.3d 614 (9th Cir. 1996). A brief summary of that case may be helpful. The plaintiff in *Allen* was a

12   game developer (for board games, not video games). The plaintiff sued the defendants — non-

13   profit organizers of a tournament for students playing the games — alleging that they violated his

14   17 U.S.C. § 106(4) right to publicly perform his games. *Id.* at 615–16. The Ninth Circuit affirmed

15   summary judgment in favor of the defendants. The Ninth Circuit noted that "perform[ing]" a

16   work, as used in 17 U.S.C. § 106(4), included "play[ing]" the work, 17 U.S.C. § 101, but it then

17   held that "the interpretation of 'play,' as used to define 'perform' in § 101 of the Copyright Act,

18   has generally been limited to instances of playing music or records" and "has not been extended to

19   the playing of games." *Allen*, 89 F.3d at 616 (citing cases). The Ninth Circuit held that an

20   interpretation of 17 U.S.C. § 106(4) public-performance rights as including the right to play a

21   game in public "would mean interpreting the Copyright Act in a manner that would allow the

22   owner of a copyright in a game to control when and where purchasers of games may play the

23   games" and rejected that interpretation, writing, "this court will not place such an undue restraint

24   on consumers." *Id.*

25       *Allen*, of course, did not involve video games. *Valve* indicated that playing video games in

26   public might constitute a public performance for purposes of Section 106. *See Valve*, 431 F. Supp.

27   2d at 1097. *Valve* distinguished *Allen* on the grounds that the cyber-cafes at issue there were fee-

28   based, whereas the tournament in *Allen* was not. *Id.* ("[*Allen*] held that whether the performance is

fee-based is an important factor in determining whether the performance is public.") (citing *Allen*, 89 F.3d at 616). But it is unclear that this distinction helps Epic — it does not allege that the Rak Video was fee-based in any way.

The concerns the *Allen* court had about giving copyright owners too much control over when and where purchasers of their games can play them might logically apply to video games too. Are video games different? Given that this is a default-judgment motion where the court does not have the benefit of full briefing on both sides, the court declines to rule on whether posting a video on YouTube of gameplay from a video game does or does not infringe upon a copyright holder's 17 U.S.C. § 106(4) rights. The court will just say this: if it does infringe, Epic has not met its burden of demonstrating that to the court. Epic's lone citation to *Valve* does not get it there. On this theory, the second and third *Eitel* factors weigh against granting default judgment.

## 2.2   Trademark Infringement

"To prevail on a trademark infringement claim under [the Lanham Act, 15 U.S.C.] § 1114, a plaintiff must show: (1) it owns the trademark at issue; (2) the defendant has used in commerce without authorization, a copy, reproduction, counterfeit or colorable imitation of the plaintiff's mark in connection with the sale, distribution, or advertising of goods and services; and (3) the defendant's use of the mark is likely to cause confusion or to cause mistake or to deceive." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1058 (N.D. Cal. 2010) (citing 15 U.S.C. § 1141(1)). "The Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers." *Bosley Med. Inst. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924)). "[T]rademark infringement protects only against mistaken *purchasing decisions* and not against confusion generally." *Id.* at 677 (emphasis in original) (quoting *Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d 576, 582–83 (2d Cir. 1991)).

United States District Court
Northern District of California

1      Epic does not plead that Mr. Rak used any trademark in connection with any commercial

2  transaction such that consumers may be misled in their purchasing decisions. Epic argues that

3  "Mr. Rak used the FORTNITE mark in commerce without authorization."[74] But merely alleging

4  that a defendant used a trademark "in commerce" does not plead a trademark-infringement claim:

5  the use must be "in connection with a sale of goods or services" to be infringing. *Bosley*, 403 F.3d

6  at 677. Epic does not plead that Mr. Rak proposed any commercial transaction or offered anything

7  for sale, much less that consumers would be misled into buying something from him or any other

8  third party under the mistaken belief that it was coming from Epic. On this theory, the second and

9  third *Eitel* factors weigh against granting default judgment.

### 2.3   False Designation of Origin

11     The Lanham Act, 15 U.S.C. § 1125(a), "imposes liability on '[a]ny person who, on or in

12  connection with any goods or services . . . uses in commerce any word, term, name, symbol, or

13  device, or any combination thereof, or any false designation of origin, false or misleading

14  description of fact, or false or misleading representation of fact,' which is likely to confuse or

15  deceive as to the origin of those goods and services." *Bladeroom Grp., Ltd. v. Facebook, Inc.*, 219

16  F. Supp. 3d 984, 993 (N.D. Cal. 2017) (quoting 15 U.S.C. § 1125(a)). This statute has "two

17  notable and important limitations." *Id.* "First, the Supreme Court has held that the phrase 'origin

18  of goods' only 'refers to the producer of the tangible goods that are offered for sale, and not to the

19  author of any idea, concept, or communication embodied in those goods.'" *Id.* (quoting *Dastar v.

20  Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003)). "This is because the protections of

21  the Lanham Act 'were *not* designed to protect originality or creativity' in the same way as

22  copyright and patent laws." *Id.* (emphasis in original) (quoting *Dastar*, 539 U.S. at 37). Second,

23  just like a trademark-infringement claim under 15 U.S.C. § 1114, a false-designation-of-origin

24  claim under 15 U.S.C. § 1125(a) "only applies in circumstances involving a 'commercial

---

[74] Mot. for Default Judgment – ECF No. 33 at 14.

1    transaction' in which 'the trademark is being used to confuse potential consumers.'" *Id.* (quoting

2    *Bosley*, 403 F.3d at 676).

3        Epic does not plead that Mr. Rak offered any tangible goods for sale, much less that he falsely

4    designated the origin of any such goods or confused any potential consumers. On this theory, the

5    second and third *Eitel* factors weigh against granting default judgment.

6

7    ### 3.   The Sum of Money at Stake (Fourth *Eitel* Factor)

8        The fourth *Eitel* factor considers the sum of money at stake in the action. When the money is

9    substantial or unreasonable, default judgment is discouraged. *Eitel*, 782 F.2d at 1472 (three-

10   million dollar judgment, considered in light of parties' dispute as to material facts, supported

11   decision not to enter default judgment); *Tragni v. Souther Elec. Inc.*, No. 09-32 JF (RS), 2009 WL

12   3052635, at *5 (N.D. Cal. Sept. 22, 2009); *Bd. of Trs. v. RBS Wash. Blvd., LLC*, No. C 09-00660

13   WHA, 2010 WL 145097, at *3 (N.D. Cal. Jan. 8, 2010). When the sum of money at stake is

14   tailored to the specific misconduct of the defendant, default judgment may be appropriate. *See Bd.

15   of Trs. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Superhall Mech., Inc.*, No. C 10-

16   2212 EMC, 2011 WL 2600898, at *2–3 (N.D. Cal. June 2011) (the amount of unpaid

17   contributions, liquidated damages, and attorney's fees were appropriate as they were supported by

18   adequate evidence provided by the plaintiffs). Here, Epic is not asking for any money. This *Eitel*

19   factor therefore weighs in favor of granting default judgment.

20

21   ### 4.   The Possibility of a Dispute or Excusable Neglect (Fifth and Sixth *Eitel* Factors)

22       The fifth and sixth *Eitel* factors consider the possibility of a dispute concerning material facts

23   and whether a defendant's failure to respond was likely due to excusable neglect. There is no

24   indication that any material facts are in dispute here, so the fifth *Eitel* factor appears to weighs in

25   favor of granting default judgment. The sixth is more complicated.

26       It is not clear whether Mr. Rak's default here was due to excusable neglect. On the one hand,

27   Mr. Rak was validly served with the summons and complaint — which was translated into

28   Russian for him — and (according to Epic), Mr. Rak responded to Epic's email serving the

United States District Court
Northern District of California

summons and complaint on him.[75] On the other hand, it is not clear whether Mr. Rak understood the legal significance of the summons or complaint or how to respond in a legal proceeding taking place in what is, from his perspective, a foreign country. Notably, while Epic says that Mr. Rak "responded to [Epic's] email," it does not say what Mr. Rak's response was or whether Mr. Rak's response indicated that he understood what was going on. Nor does Epic say what, if anything, it did to follow up with Mr. Rak after he responded. The court does not mean to suggest that Mr. Rak is free to ignore this action without consequence or that default judgment would be improper. But nor do the facts in this record foreclose the possibility that Mr. Rak's neglect may be excusable. *Cf. TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 699 & n.6 (9th Cir. 2011) (considering whether defaulting defendant was "unfamiliar with the legal system" in evaluating whether her default was due to excusable neglect), *overruled on other grounds as recognized in Newgen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016). Given the lack of information the court has about Mr. Rak's status or understanding of this action or about Epic's and Mr. Rak's interaction after Epic served the summons and complaint on Mr. Rak, the court will say just this: if the sixth factor weighs in favor of default judgment, on this record, it does not do so strongly.

### 5. The Strong Policy Favoring Decisions on the Merits (Seventh *Eitel* Factor)

The seventh *Eitel* factor considers the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Although default judgment is disfavored, "[t]he very fact that F.R.C.P. 55(b) exists shows that this preference, standing alone, is not dispositive." *Kloepping*, 1996 WL 75314, at *3. "While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits[,] . . . [as] when a party fails to defend against an action[.]" *Id.* That said, while not necessarily dispositive, this factor does lend some weight against a default judgment, as decisions on the merits are favored and default judgments are not.

---

[75] *See* Simpkins Decl. – ECF No. 35 at 2 (¶ 3).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CONCLUSION

On balance, on this record, the *Eitel* factors weigh against granting default judgment.

The undersigned grants Epic leave to amend its complaint, file a new motion for default judgment, or both. (If Epic amends its complaint, it must obtain a new entry of default before it can file a new motion for default judgment.)

If Epic submits any new filings, it must serve on Mr. Rak certified Russian translations of its filings (along with the native English versions) and write a cover letter or email to Mr. Rak in both English and Russian, and must file both the English versions and the certified Russian translations on the docket.

Should Epic not file an amended complaint or a new motion for default judgment within 30 days of the date of this order, the undersigned will direct the Clerk of Court to reassign this case to a district judge and will recommend that the newly assigned judge deny Epic's motion for default judgment.

The court directs Epic to serve this order on Mr. Rak.

**IT IS SO ORDERED.**

Dated: June 12, 2018

_____
LAUREL BEELER
United States Magistrate Judge